LOTTINGER, Judge.
This is a suit for damages resulting from an automobile accident between a car driven by petitioner and a truck driven by Willie Wright, an alleged agent of defendants. The ' lower court gave judgment in favor of petitioner and awarded damages in the sum of $10,000. The defendants have taken this appeal.
The accident in question occurred on January 1, 1948, in the Parish of West *613 Feliciana, Louisiana. The original petition was filed on December 29, 1948, and prays for judgment in solido against John T. Lewis and Howard E. Lewis, the alleged partners who owned the truck, and H. P. Durrett, agent and adjuster, who was the insurance carrier of the Lewis’. Service was made on the Lewis’ on January 7, 1949, and on Durrett on January 10, 1949. On January 29, 1949, petitioner filed a supplemental and amended petition alleging that the defendant partnership was actually composed of John G. Lewis and Pearl Lewis, instead of the parties as alleged in his original petition. In the amended petition, petitioner further alleged that Globe Indemnity Company was the insurance company for which Dur-rett was the adjuster. The prayer of the amended petition was for judgment against John G. Lewis, Pearl Lewis, H. P. Durrett, agent and adjuster, and Globe Indemnity Company, but did not ask for judgment against the firm of Lewis & Lewis.
Certain exceptions were filed by the defendants which were decided by this court in its prior judgment reported in 60 So.2d 230. In our said opinion we sustained the judgment of the lower court on all of the exceptions which had been filed, except a plea of prescription of one year filed on behalf of Globe Indemnity Company. The lower court had dismissed the petitioner’s suit as to all defendants.
After we had overruled the plea of prescription and had remanded the case to the lower court for trial on the merits, both petitioner and defendants applied to the Supreme Court for writ of certiorari. Plaintiff’s application for a writ was denied because the court found no error of law, and defendant’s application was denied because the judgment was not final. Trial on the merits was subsequently held in the lower court, which gave judgment for petitioner in the sum of $10,000. The defendant has taken this appeal.
There are but two questions now before this court which have not been previously decreed by final judgment. Those two questions are: first, whether the plea of prescription should have been maintained, and second, whether the driver of the defendant vehicle was guilty of negligence so as to allow recovery by the petitioner. All other questions were finally decided when the Supreme Court refused petitioner’s application for certiorari. ■
Insofar as this court is concerned the plea of prescription filed by defendant, Globe Indemnity Company, is res ad-judicata. The question was before this court previously, and was disposed of by this court in its opinion reported in 60 So.2d 230.
Defendant takes the position that since the Supreme Court made the statement in refusing defendant’s application for a writ of certiorari, the judgment on the plea of prescription was not final and the question is still open here. It is our opinion that our judgment rendered in this case on the plea of prescription holding that the prescription was interrupted and that the defendant was legally cited and made a party to this suit by the first amended petition of the petitioner, insofar as this court is concerned, is res adjudicata and is not now subject to further inquiry. Folse v. Police Jury, 128 La. 1080, 55 So. 681; State v. Svoboda, 221 La. 893, 60 So.2d 715; In re Quaker Realty Co., 7 Orleans App. 364; Wright v. Louisiana Ice and Utilities Co., 19 La.App. 173, 138 So. 450; Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132; Thornton v. Beeson, La.App., 149 So. 117.
It is our opinion that when an issue in a case is decided by this court, and our decision on such issue'has not been reversed by the Supreme Court,' that our ruling on that particular issue, insofar as this court is concerned, is the law of the case. If aaiy relief is to be accorded the appellant under our ruling in overruling the plea of prescription, that relief will have to come from the Supreme Court, because if we could entertain such an action at this time, it would be granting another héaring on a matter which we have previously decided and *614 which, insofar as we are concerned, is res ■ adjudicata.
The lower court rendered written reasons for its judgment. Its findings of fact, as found in the said reasons, are as follows:
“Coming hack to the merits and what should be determined to be the facts in the case, the issue is clouded by a wide divergence in the testimony of the. several witnesses concerning what happened. .According to the plaintiff’s testimony and that of the three other people who were in the car with him when the collision occurred, he was on his way from Winnsboro to Jackson, La. At a point about one half mile south of the Mississippi-Louisiana line they observed a pulp wood truck approaching them around a curve in the road traveling north and on the wrong side of the highway. The plaintiff testified that this truck was some three hundred steps distant when he first observed it. As it continued towards him and still on the wrong side of the road making no apparent effort to pull over on its proper lane, he sounded his horn to attract the attention of the pulp wood truck driver who according to plaintiff was paying no attention to- his approaching automobile. That when he sounded his horn the truck driver attempted to pull over to his proper side ' of the road but failed to get the trailer part of his truck clear with the consequence that plaintiff's automobile was struck by the trailer with the result of causing severe and possibly permanent injuries to plaintiff. The testimony of the witnesses for the defendant tends to the conclusion that entire responsibility for the accident is attributable to plaintiff. In one particular only is the testimony of plaintiff and that of the truck driver in agreement. The plaintiff testified that he was as far over in his proper lane of travel as he could get. The truck driver likewise testified that plaintiff was on his proper side of the road, that he himself was on his proper side of the road and no - collision would have occurred had not plaintiff in attempting to pull further over became involved in loose gravel which swung him back to the left causing the automobile to strike the bumper and left side of the front of the pulp wood truck. It seems that besides the driver of the truck there were two other people occupying the cab. It further appears that one of these people was asleep and only awakened when the truck and the automobile were approximately fifty feet apart. It might be said at this time that the details of the position of the wheels of the respective motor vehicles and other minute details of what happened, cast serious doubt on this witness’ testimony. He saw too much in too short a time when suddenly aroused from sleep, for his testimony to be creditable.
“It seems to me that the nub of the whole question lies in the verity of one particular portion of the testimony given by the plaintiff, and that is, did the plaintiff sound his horn. If his testimony is true as to this fact then it becomes immediately apparent that the driver of the truck and his passenger, Nelson Campbell, were paying no attention to the road ahead of them and the approaching car. It is my belief, based upon all the testimony offered, that the driver, Willie Wright, did not know which side of the road plaintiff’s car was on for the simple fact that he was. paying no attention to the road ahead of him and that he resorts to the suggestion that plaintiff in attempting to get further to his right got his wheels in loose gravel and this caused his car to swerve to the left and strike the approaching truck.
“It appears that the truck had just rounded a curve where the outside,— that is to say his proper lane of travel going north, was banked so as to be somewhat higher than the inside lane which was the proper lane for a car going south, as it was the right hand *615 side of the road. This physical fact lends credence to plaintiff’s testimony that he was on his proper side of the road as he approached the truck. There appears no earthly reason why he should have been anywhere else. On the other hand, the courts have recognized the tendency of motor vehicles, whose proper lane would be on the outside of a curve, to cut the curve and take the inside especially if traveling at any considerable speed and heavily loaded, as the pulp wood truck appears to have been.
"Considering that creditability of witnesses is a determining factor in any case where there is a sharp conflict in the testimony' about what happened, having heard these witnesses, I was impressed by that given by the plaintiff concerning the salient facts preceding the accident. If he told the truth, and it is my belief that he did, then the truck driver was negligent in not watching the road ahead of him and failing, considering the nature of the road, to have his truck under proper control.
“The defendant alternatively pleads contributory negligence on the part of plaintiff, averring when he perceived his peril he should have come- to a stop. Had he done so, this might or might not have avoided the collision. It might possibly have made matters worse. In any event he was confronted with an emergency not of his ■ own making and with little time to-weigh the probabilities. He was warranted in believing that the truck driver would do what he should have done and it does not appear that he had the last clear chance of avoiding the accident by any action he might have taken.”
We concur with the findings of fact of the lower court, as quoted above, but do not wholly agree with its conclusions as based on the facts. We believe, as did the lower court, that the truck rounded the curve in its left hand lane, and there is evidence to believe that, in view of the sharpness of the curve, the truck was proceeding at an excessive rate of speed. The evidence further shows that the petitioner noticed the truck approaching him, in its improper lane, while the truck was some 300 paces, or about 900, feet away. Notwithstanding the precarious position that petitioner found himself to be in, he did nothing at first, and later slackened his speed and blew his horn. The evidence shows that petitioner could not pull off to his right as he would have run into a ditch, or embankment, five or six feet deep. The evidence is conclusive to the fact that,' at the time of the actual, impact, the truck had started to turn into its proper lane, as a matter of fact, only the rear end of the truck remained in the petitioner’s lane, and this was the portion of the truck that was hit by petitioner.
There is no question in' our minds that the lower court was correct in finding the truck driver guilty of negligence. We feel, however, 'that the lower court erred in not concluding that the petitioner was guilty of contributory negligence. Had the petitioner, upon seeing the defendant truck approaching in the wrong lane, and after observing that the defendant’s truck would not or could not regain its proper lane, come to a stop, tinder the actual facts of this case,1 the truck would have had time to regain its proper lane of traffic and the collision would never have occurred.
This was not a situation where petitioner first noticed the possibility of a collision when the truck was only a short distance from him. He testified that he first noticed the truck in its1 improper lane when it was about 390 steps away. At the time, petitioner was traveling at a speed of 25 or 30 miles per hour. The entire truck was in its left lane. In spite of this condition, petitioner testified that he kept driving, waiting for the truck to pull over on his side and, when it didn’t, petitioner sounded his horn and began to slow down. The testimony of petitioner, in this score, is as follows:
“Q. I say how far did you say you were from this truck when you first *616 saw it? A. It must be about three hundred and ninety steps from where I first saw the truck.
“Q. You were then driving, according to your estimate, around twenty five or thirty miles an hour? A. Yes.
“Q. How much of the truck encroached upon your side of the road when you first saw it? A. All of it.
“Q. All four wheels of the truck then were on your right hand side of this mound of that gravel that ran down the center of the road? A. Yes.
“Q. What did you do then, Mr. Davis? A. I kept driving waiting for him to pull over on his side and he didn’t. Then I sounded my horn and began to slow down.
UQ. How close were you to him when that took place? A. I couldn’t say just exactly how close but the distance was greatly cut down.
“Q. Well, about how far was it? A. About half the distance.
“Q. Well then, how far were you from him when you blew your horn? A. About there. About two hundred . steps. About half that distance from the time I first saw him.
“Q. I would rather we would not , try to half distances. What I want . to know is how far your car was from the truck when you sounded your horn and began to slow down? A. Approximately one hundred eighty or two hundred steps.
“Q. When you sounded your horn what did the driver of the truck do? A. He noticed me then.
, “Q. What else ? A. He thought he could cut over but he didn’t. He kept : coming on up the road.
■ “Q. About how far did your, car travel from the time you blew your horn until the accident took place? A. About forty steps.
“Q. How far did the truck travel during that time? A. From one hundred eighty to two hundred steps.
“Q. Did he reduce the speed of his truck any? A. No.
“Q. Did you reduce the speed of your car any? A. Yes.
“Q. How fast were you going when the accident happened? A. Approximately twelve to fifteen miles an hour.
“Q. Could you have stopped your car completely from the point where you first blew your horn to the point of the accident? A. I reckon I could have stopped.
“Q. But you did not try to stop your car despite the fact that you saw this truck coming between fifty and sixty miles an hour entirely on your side of the road ? A. I did not try to stop dead still.”
The record shows that this was a grav-elled road with high loose gravel piled between the lanes and it was most apparent to the plaintiff that this truck would more than likely have quite a bit of difficulty in getting back on its proper side. The record further shows that the truck was in the process of crossing over into its right-hand lane of traffic at the time of the impact. It is our conclusion that the petitioner could and should have stopped when he noticed that the truck approaching him in his lane of traffic would not or could not regain its proper lane. The evidence shows that, had the petitioner stopped, the truck would have had sufficient time to regain its proper lane of traffic and the accident would have been avoided.
We think the proper rule to follow in this case is well quoted in Blashfield’s Cyclopedia of Automobile Law and Practice,. Vol. 2, Sec. 919, which is as follows:
“A motorist has a right to assume that the driver of a vehicle coming *617 from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver, therefore, proceeding on the right side of the traveled way, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving.
“Likewise, a motorist on the right side of the road and traveling in a lawful manner can assume that one approaching in the opposite direction will control his car in obedience to the law of the road and will not suddenly turn across his path.
"These assumptions may not be indulged in, however, after he sees or ought to see, from the situation of the cars or highway or the conduct of the approaching driver, that they are unwarranted. In other words, the duty of an automobile driver, who is on the right side of the street, to stop or take other precautions to avoid a collision with an approaching vehicle, only arises when by due care he discovers that another on the wrong side of the street cawnot or will not himself turn to the right to clear his way. It follozvs that his right to assume that the other driver will comply with the laws of the road is not absolute, but may be qualified by the particular circumstances such as the other vehicle’s proximity, position and movement and the condition of the road, including the usable width.” (Italics ours.)
. , . We are of the opinion what was said in the case of Williams v. Brown, La.App., 181 So. 679, 682, is true in the instant case.
“It is true, as is said by Blashfield, that a motorist has the right to assume that one approaching him will hold his side of the road or, if not entirely thereon, will regain it in time to avoid ‘ a collision, but this rule, as is also said by him, is not without its exceptions. If the motorist, from all appearances, has good reason to believe that the operator of the approaching car does not realize the perilous situation he has created and is continuing or, from the situation in a general way, has no reasonable ground upon which to assume that such operator will timely resume travel on his side of the road, it devolves upon him to exercise all due diligence and precaution and to take such action as will avoid an emergency and avert the impending accident'.”
It is to be remembered in the case at bar that the plaintiff never stopped- his vehicle but continued on to the very moment of impact. The only thing that the record shows the plaintiff did in order to avoid this accident, although warned by his wife that the truck was going to-hit him, was to blow his horn and begin to slow down, but too late. In other words; as we view the case, the proximate cause of the accident was the continued negligence' of the defendant and the contributory negligence of the plaintiff in' failing to come to a stop if necessary or take action prior to the time that he did. We therefore feel that the petitioner was guilty of contributory negligence and such contributory negligence will bar his recovery in this matter. ■
For the reasons assigned, the judgment of the lower court is reversed, and there is hereby entered judgment in favor of defendant and against petitioner, dismissing petitioner’s action. All costs will be paid by petitioner.
Judgment reversed.