CAVANAUGH, Judge.
On September 3, 1953, at approximately 3:00 o’clock p. m. a 1950 model Tudor Ford automobile being driven by plaintiff and a 1951 model Tudor Chevrolet owned and being operated by the defendant, Richard Earl Allen, and insured against public liability and property damage by the other defendant, State Farm Mutual Automobile Insurance Company, were involved in a collision. The collision occurred on a section of Highway 90 about one and one-half miles northwest of Baldwin in St. Mary Parish. The general course of the highway is east and west but at this particular section of the highway where the accident occurred it runs in a northwest and southeast direction. Plaintiff was traveling from Houma toward New Iberia and defendant was traveling in the opposite *101 direction. The highway was being widened from a 18 foot concrete slab (which was the covering of the old highway) to 24 feet, 3 feet on each side by a base substance of concrete and asphalt and then covered with a black top coat. The north 3 feet, or the side of the pavement on which the plaintiff was traveling, had been fully completed and the second coat, or resurfacing coat, had been applied, but on the south side, or the side on which the defendant was traveling, the space of the shoulder had been cut or graded out preliminary to laying the concrete base. This left a cut on the side of the highway on which the defendant was traveling about 18 or 20 inches deep extending parallel along the side of the pavement.
The facts in the case as to how the accident happened are not in dispute. Both vehicles were being driven prior to the accident at a rate of speed of between 40 and 45 miles per hour. A truck was traveling ahead of defendant about 250 or 300 yards and he testified that when he saw the stop light of the truck blink he applied his brakes and at that time plaintiff’s automobile had passed the truck about 50 yards and that when the red light came on he was worried about the condition of the road so he put his foot on the brake and his car started skidding and he lost control and that his car skidded to the left into the oncoming lane of traffic and he stated that he was 150 or 200 yards from plaintiff’s car at the time he went over into the oncoming lane. That the brakes on the left rear wheel locked causing its rear to swing out placing the right front of his car sidewise to the oncoming car being driven by the plaintiff and that his car skidded 140 to 150 feet; that his car came to a stop when the collision occurred; that the right front fender collided with the front end of the plaintiff’s car. The defendant further testified that he kept his foot on the brake after the car went to skidding and that he tried to steer back into his lane but that it would not work. Defendants’ evidence also shows that he was 250 to 300 yards when he first applied his brakes and that the reason he applied his brakes was not so much the blinking of the tail light of the truck ahead of him but because of a cane truck he saw on the side of the highway and the cut or dip on his side of the road and some cross ties for this cane truck to come out on to the road.
Our examination of the testimony further shows that prior to the time the defendant applied his brakes he ran through a puddle of water on the road.
The plaintiff’s testimony is that when he saw the defendant’s car come over into his lane of travel he pulled his car to the right and over to where his right wheels were on the shoulder; that he applied his brakes and reduced his speed. In some places in his testimony he states that he first saw the defendant’s car on his side of the road 150 or 200 feet; later this distance is reduced to where he thought it was perhaps 50 feet or the distance of the courtroom.
Defendant argues here that defendant’s brakes being in good condition when he had them examined at Lafayette and had experienced no trouble with them prior to the time that they were applied preceding the accident and no road signs indicating that the pavement was slippery and that a motorist should reduce his speed he thinks that his client should be exonerated from negligence. The determination of this question is whether or not from the time defendant commenced traveling on this section of the road which was being repaired after a rain and knowing that this black top was damp and the 18 or 20 inch cut along the side of the road he was traveling and knowing that he was traveling at his own risk he should have governed his speed accordingly although a speed marker said not to exceed 45 miles. The sign there on the road advising motorists that they traveled at their own risk was a sufficient warning to him to proceed with caution. Now going at the rate of speed of 40 or 45 miles per hour would not be considered hazardous under normal conditions but driving along a narrow strip of pavement ten and a half feet wide and meeting on *102 coming traffic, knowing that a cut 18 or 20 inches deep is at your right, surely should have been an indication to defendant whether the speed although authorized by the Department of Highways was not warranted under the conditions existing at the time. These markers governing speed on highways have reference to normal conditions and surely could not mean to apply on a slippery black top or asphalt covering as defendant was traveling on at the time his brakes were applied. The police officers frankly stated that you didn’t have to go very fast to slip or slide on the second coat or covering which had been applied to the top of the pavement. This slippery condition of the road, as well as the other obstructions such as the cross ties affording the cane truck an approach from the side of the road and the ditch along the concrete slab on defendant’s side at the speed defendant was driving frightened him. He was traveling along the cut and the pavement was damp for some distance. He knew this and he should have regulated his speed accordingly. The plaintiff’s evidence is that he pulled as far to the right side of the road he was traveling and was afraid to pull any farther on accounted a canal running parallel to his side of the pavement only a few feet from the shoulder.
When defendant driving on a slippery black top road drove his car through a puddle of water and immediately applied his brakes he should have known that his car would skid. What was said by the late Judge Taliaferro in Simmons v. Holman, La.App., 45 So.2d 374, 376, is appropriate here:
“All motorists know the antics a car will usually perform on a slippery black top road when the brakes are suddenly and forcefully applied.”
The record in this case does not show any reason why the defendant should have forcefully applied his brakes after running through the puddle of water much less to continue to hold them down after he realized his car was skidding. We know that loss of control of a motor vehicle due to surface conditions of a highway is not invariably evidence of negligence but when caused by the sudden application of brakes when circumstances do not require that action negligence will be imputed. Berard v. Bulliard, La.App., 199 So. 674.
We believe that the evidence shows that the defendant was negligent.
Finding that the defendant was negligent in not having his car under proper control and in not maintaining a proper lookout for the hazards he should have anticipated while operating his vehicle on a highway being reconstructed, being charged with the notice of the condition existing on the highway at the time the accident happened, we will now consider the plea of contributory negligence urged by defendants to preclude plaintiff from recovering. The defendants-appellants contend that plaintiff should have stopped his automobile before the collision since he saw defendant’s automobile out of control for a distance of 150 or 200 feet. The evidence shows that plaintiff was driving at a speed of about 40 miles per hour when he observed defendant’s car skidding. The testimony shows that he applied his brakes and reduced his speed and put the right wheels of his car off of the pavement. It may be that if plaintiff had applied his brakes more forcefully than he did and tried to come to an abrupt stop it may be that his car would have swerved and catapulted off the highway into the canal. Of course, the proper thing for him to have done if he could have, would have been for him to stop and stay on the highway but because he didn’t do it that does not mean that he could have avoided the impact with defendant’s car. The emergency created by the operation of defendant’s car was no making of plaintiff and going at the speed he was traveling at the time he realized that defendant’s car would not return to its side of the highway he did not have time to stop and prevent defendant’s automobile from colliding with his Ford. It may have been an error of judgment on his part in not realizing sooner that defend *103 ant’s automobile would not return to its side of the highway but we can not say that the accident could have been avoided. The factual situation in the case of Davis v. Lewis & Lewis, 72 So.2d 612, decided by this Court, is quite different from what it is here because there the plaintiff’s automobile was traveling at a rate of speed and at a sufficient distance where it could have been stopped after the danger had been apprehended. No such condition exists in the case at bar because both vehicles were moving at a rate of speed of 40 or 45 miles per hour and we doubt if plaintiff had time for thinking and reaction to do anything else except what he did do. We do not think that there is any merit in the plea of contributory negligence urged by the appellants.
On the question of quantum the defendant-appellants have filed in this Court a motion to decrease the award or remand the case for the introduction of evidence based on the ground that the 52 weeks loss of wages, or the sum of $5,824, awarded plaintiff as actual damages for the time he lost from his work should be reduced to a period of four months. Attached to this motion is report of medical examination made by Dr. Kramer of Lafayette and also affidavit of M. B. Owens, Chief Clerk of Superior Oil Company, that the plaintiff went to work for Superior Oil Company on July 22, 1954, and is presently employed by the Superior Oil Company as a roughneck at a wage of $1.70 per hour. We can’t consider this evidence because it was not introduced in the lower court. The lower court predicated the actual damages suffered by the plaintiff on the testimony of Dr. Gilly, a witness for defendant, who said that it would be a year from the date of the accident until the plaintiff could fully return to hard laborious work and the other medical testimony in the record. The appellee has answered the appeal and asks that the award be increased.
The medical testimony in this case shows that the plaintiff remained in the hospital at Franklin from the time of the accident about 3:30 or 4:00 o’clock until the next day at noon when his brother brought him to Lake Charles. He was then carried the next morning to Converse, Louisiana, and placed in the Allen Sanitarium being operated by Dr. O. L. Sanders where he was hospitalized for a week. X-rays were made of parts of his head and face and his knee and the laceration on the knee was sutured at Franklin but no X-rays were made of his back. X-rays were made of his back by Dr. Allen and also by the physicians in Shreveport. Neither of these X-rays, according to the testimony, reflected any fractured vertebrae. The disability to the spine was not detected until the plaintiff was examined by Dr. Gilly at the request of the defendant in February, 1954. It was then discovered by X-ray examinations made in Lafayette that plaintiff had old healed fractures of the third, fourth and fifth vertebrae. Neither side had any of the X-ray experts compare the first pictures made following the accident with those Dr. Gilly examined when he discovered the fractures. The X-ray report made by the X-ray examiner in Shreveport was not filed in the record and it is the evidence of the Shreveport physicians as far as the back injury went plaintiff only suffered a lumbosacral strain. Dr. Sanders did not think that plaintiff had suffered a fractured vertebra until after he examined him some time after it was discovered by Dr. Gilly, when he made subsequent pictures. The plaintiff worked during two weeks in December, 1953, but said that he had to quit because he was not able to do the work. He resumed work for the Superior Oil Company on July 22, 1954, according to the affidavit attached to the motion to remand.
According to a calendar computation and accepting as true the facts set forth in the motion to remand, together with the accompanying attachments, the plaintiff resumed his work six weeks sooner than Dr. Gilly thought that he would be able to and according to the testimony of the other medical experts. If an estimated period of disability by medical experts does not ever have any greater error in it than what was had in this case, Courts would be *104 fortunate in adjudicating correctly the loss of earnings claimed by a litigant. It may be the plaintiff resumed his work on account of necessity when from a medical standpoint he should have refrained from attempting to do the laborious work of a roughneck in an oil field. The amount awarded for the loss of earnings perhaps had some bearing on the amount awarded by the court below for pain and suffering, and 15% permanent disability in his left knee.
Courts have the right to remand for the introduction of further evidence to prevent a miscarriage of- justice, but it should be exercised sparingly and only in cases where it is necessary. The record on the quantum when all of the items are considered does not warrant it.
We have examined the evidence carefully and have come to the conclusion that the award is neither excessive nor inadequate when the entire record is considered.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellants.