HARDY, Judge.
This is an action for the recovery of damages for personal injuries sustained by plaintiff, Bobby Ray McCary, in an automobile accident between a truck driven by plaintiff and owned by his employer, and a truck owned by the Department of Highways of the State of Louisiana, driven by one of its employees and insured by Manufacturers Casualty Insurance Company, which is named as defendant in this suit, under a policy of insurance providing for a maximum limit of liability in the sum of $10,000. To these proceedings intervened plaintiff’s employer, who prayed for judgment to the extent of compensation payments made to plaintiff, together with attorney’s fees, out of any amount which might be awarded in favor of plaintiff. After trial there was judgment in favor of plaintiff in the full sum of $10,000 and further judgment recognizing intervenor’s claim for recovery of compensation payments, together with attorney’s fees in the sum of $200, all to be paid out of the judgment rendered in favor of plaintiff. From this judgment the defendant has appealed.
The facts are so well established by a vast preponderance of the testimony as to admit of little question. The accident occurred about 11:00 A.M. on July 22, 1957, on Louisiana State Highway No. 6 at a point about one mile east of the Town of Robeline in Natchitoches Parish, at which time the asphalt surface of the highway was wet and slippery from rain. Plaintiff, an employee of a service station operator in the Town of Robeline, answering a call from a motorist who had sustained a flat tire, was driving east on the highway, entirely in his right-hand lane, when he was struck by a stake-bodied truck belonging to the Department of Highways and driven by its employee, one J. C. Vercher, who was accompanied by a fellow employee, Otto Hicks by name, which vehicle was being driven west on the highway. The highway department’s truck, due to the application of brakes by the driver, skidded on the wet surface of the highway across the center *526 line into the path of plaintiff’s approaching truck, sideswiping the latter vehicle with such force that the top of the cab of plaintiff’s truck was sheared off, and plaintiff was seriously injured.
Near the scene of the point of impact the car which had sustained a flat tire, driven by a party who is identified only as a Mr. Black and whose testimony was not available on trial, was parked on the extreme north edge of the road, as far on the shoulder thereof as was possible but partially on the asphalt slab of the highway. It was plaintiff’s intention, after passing the parked car, to turn into the driveway of a home located on the south side of the highway and return to this car from which he had received the trouble call.
Plaintiff’s petition alleged a number of grounds of negligence against the driver of the highway department truck, of prime importance among which were the charges of encroaching upon plaintiff’s lane of travel; operating a vehicle at a dangerous and excessive rate of speed under the circumstances; failing to maintain a proper lookout and failing to take proper precautions on approaching a vehicle parked on his side of the highway. The principal defense is found in the contention that as Vercher, the driver of the highway truck, was proceeding over a rise in the highway he was suddenly confronted with a vehicle parked in such manner as to substantially block his lane of travel, and his action in applying the brakes of his truck was in response to the unexpected and sudden emergency which confronted him. We find no merit in this asserted defense. The testimony and the photographic exhibits taken at the scene of the accident overwhelmingly justify the conclusion that Vercher was not confronted with any sudden emergency for it is completely evident that the parked car was susceptible of observation for a distance in excess of 700 feet in the direction from which the highway department vehicle was approaching. Apparently conscious of this factual circumstance, Vercher attempted to explain his failure to take timely precautionary measures by contending that he was not certain when he first observed the Black automobile whether the vehicle was stopped or was still in motion in the same direction in which he was proceeding. However, it is clear from Vercher’s own testimony that this uncertainty, if, in fact, it existed, did not endure for any perceptible period of time.
Considerable light is thrown upon the physical circumstances of the accident by the establishment of the location of the several vehicles immediately following the collision. After the impact plaintiff’s truck came to rest in the ditch on the south side of the highway and the highway department truck was stopped on the extreme north side of the highway, still some 100 feet, more or less, east of the Black automobile, which Vercher claimed was the cause of the “sudden emergency."
The pertinent facts are conclusively established, namely, that plaintiff at all times was proceeding at a very moderate rate of speed, some 20 miles per hour, insofar as the testimony discloses, entirely in his own lane of travel; that Vercher was guilty of negligence in failing to observe the need for unusual caution to keep his truck under control and take timely action; that the point of impact occurred in plaintiff’s proper lane of travel, on his right side of the highway, and that there was no development of any state of emergency, sudden or otherwise, which excused Ver-cher’s failure to bring his vehicle under control.
In support of the defense of sudden emergency counsel for defendant cites the case of Anthony Bass Lumber Co. v. Marquette Casualty Co., 227 La. 339, 79 So.2d 330. The facts of the cited case are not analogous, in even a slight degree, to those here under consideration. In the Bass case the Supreme Court found that the emergency had been created by the movement of a parked truck into the highway immediately in front of the vehicle of defendant *527 assured. In the case here under examination, as we have above observed, there was no emergency of any nature or character, for it is clear that the driver of the highway truck had every opportunity to bring his vehicle under control at any point over a distance of several hundred feet before reaching and passing plaintiff’s approaching vehicle.
Counsel for defendant further contends that plaintiff failed to exercise due care when he saw or should have seen the highway truck having difficulties, and cites Davis v. Lewis & Lewis, La.App., 72 So.2d 612, 613. Again we observe that the established facts do not support this contention, nor do they indicate that plaintiff, by observation, could have anticipated the unforeseeable and entirely unnecessary encroachment of an approaching truck into his proper lane of travel.
The most difficult point with which we have been confronted in the instant case bears upon the question of qaun-tum. Plaintiff sustained serious and painful injuries, consisting of an avulsion of the scalp, lacerations of the face, a transverse fracture at the site of the junction of the middle and distal third of the right radius; a comminuted fracture of the proximal phalanx of the thumb, and a dislocation of one of the carpal bones of the right wrist. Following the accident plaintiff lost a great deal of blood, was in a moderate degree of shock and, for a brief period of time, according to the attending physician, in some danger of death. After being confined to a hospital in Natchitoches for a period of four days plaintiff was removed to the North Louisiana Sanitarium in Shreveport and placed under the care of an orthopedic specialist. An open reduction of plaintiff’s fractured arm was made and the bones were affixed by the insertion of an intermedullary pin, which still remained in place at the time of trial. Plaintiff was discharged from the North Louisiana Sanitarium after about ten days and for a considerable period of time his right arm was encasted. At or about the time of trial, which was held some six months following the occurrence of the accident, plaintiff was totally disabled and, according to the testimony by deposition of the specialists who had treated plaintiff and another orthopedic surgeon, who had made several examinations at the request of counsel for defendant, but who testified on behalf of plaintiff, it was expected that this disability would continue for an additional period of some four to six months before plaintiff attained the maximum degree of recovery. Fortunately, the prognosis of the medical experts who testified in the case was extremely favorable and it was indicated that no complications could be anticipated and that a complete recovery would be effected, subject to some very slight residual impairment of the injured arm and wrist. There is no indication in the testimony of the medical experts that plaintiff will suffer any substantial degree or nature of permanent disability. There can be no question as to the severe pain which plaintiff suffered, as the result of his injuries, for a considerable period of time. Nor is there any doubt as to the fact that the lacerations of the face, particularly the forehead and the region about the left eye, have left permanent scars. However, the photograph of plaintiff’s face, in natural color, which was made about the time of trial, indicates that though these scars are perceptible and to some degree disfiguring, they are not of such nature or extent as will cause plaintiff embarrassment or make his appearance in any degree repulsive or abhorrent. One of the items of damages claimed by plaintiff, and which is admitted, is made up of hospital and medical costs and expenses which amounted to a total sum of approximately $1,150. To this item should be added a reasonable cost of additional medical attention in the event it becomes necessary to remove the intermedullary pin by surgical procedure. It was established that at the time of the accident plaintiff was employed at a weekly wage of $35, but it was further shown that for some months prior to the employment in which he was then engaged *528 plaintiff had earned regular weekly wages amounting to $58. However, it was not proved that plaintiff was steadily employed, and, on the contrary, it seems plain from the record that he moved about from job to job. We think the allowance for loss of wages should properly be based upon plaintiff’s maximum regular weekly rate of earnings and that he should be allowed the period of a full year, in line with the expert medical testimony, together with a reasonable additional period within which it may be expected his ability to work may be slightly impaired before he is fully recovered. On the basis of these several items — loss of wages, pain and suffering, medical expenses and permanent facial scars — after careful consideration we think an allowance of $8,000 would be adequate and it follows that we regard the judgment for the full amount of $10,000, representing the maximum liability under defendant’s policy of insurance, to be somewhat excessive.
For the reasons assigned the judgment appealed from is amended by reducing the amount thereof to the sum of $8,000 and as amended it is affirmed. Costs of this appeal are 'assessed against plaintiff-appellee.