MOISE, Justice.
A writ was granted to review a judgment of the Court of Appeal, First Circuit, which reversed the judgment of the trial court, which rendered a judgment in favor of Louis C. Davis for $10,000, 72 So.2d 612, for injuries sustained in an automobile accident.
Our concern here is on the merits of the case.
In 226 La. 1059, 78 So.2d 173, we affirmed the judgment of the Court of Appeal which overruled the plea of prescription filed by the Globe Indemnity Company, the defendant. The First Circuit Court of Appeal adopted the facts as found by the trial judge, and we have adopted the same facts in this Court. The Court of Appeal reversed the judgment in the district court on the application of the law and found that the plaintiff was guilty of contributory negligence — which opinion we do not share, and to which opinion Judge Cavanaugh, one of the Judges of the Court of Appeal, dissented.
The facts are as follows:
The date of the accident was January 1, 1948. It occurred in the Parish of West Feliciana, and it was on the gravelled Woodville-Jackson Road. Plaintiff was driving, with members of his family, a 1937 Chevrolet. They were on their way *1067 from Winnsboro, Louisiana to Jackson, Louisiana. At a point about one-half mile south of the Mississippi-Louisiana line, plaintiff and the occupants of his car noticed a truck, heavily loaded with pulpwood, approaching them around a curve in the road of travel north and on the wrong side of the highway. About 300 steps distance from the approaching truck plaintiff sounded his horn to attract the attention of the truck driver, who was giving no heed to the traffic at all. Finally, the truck driver attempted to pull over to. his side of the road, but he had waited too long to do what was his duty to do and he failed to get the trailer part of his truck clear. As a result, plaintiff’s automobile was sideswiped by the trailer hitting the left front end of his car, causing severe and possible permanent injury to plaintiff. His leg was broken, with the bones protruding through the flesh, and he had to remain in the hospital for a period of fourteen months.
After seeing, hearing and observing the witnesses and the manner of giving their testimony, the trial Judge made the following observations as to the testimony:—
“The testimony of the witnesses for the defendant tends to the conclusion that entire responsibility for the accident is attributable to plaintiff. In one particular only is the testimony of the plaintiff and that of the truck driver in agreement. The plaintiff testified that he was as far over in his proper lane of travel as he could get. The truck driver likewise testified that plaintiff was on his proper side of the road, that he himself was on his proper side of the road and no collision would have occurred had not plaintiff in attempting to pull further over became involved in loose gravel which swung him back to the left causing the automobile to strike the-bumper and left side of the front of the pulp wood truck. It seems that besides the driver of the truck there were two other people occupying the cab. It further appears that one of these people was asleep and only awakened when the truck and the automobile were approximately fifty feet apart. It might he said at this time that the details of the position of the wheels of the respective motor vehicles and other minute details of what happened, cast serious doubt on this witness’ testimony. 'He saw too much in too short a time when suddenly aroused from sleep, for his testimony to be creditable.’ (Italics ours.)
“It seems to me that the nub of the whole question lies in the verity of one particular portion of the testimony given by the plaintiff, and that is, did the plaintiff sound his horn. If his testimony is true as to this fact then it becomes immediately apparent that the-driver of the truck and his passenger, Nelson Campbell, were paying no attention to the road ahead of them and the-approaching car. It is my belief, based *1069 upon all the testimony offered, that the driver, Willie Wright, did not know which side of the road plaintiff’s car was on for the simple fact that he was paying no attention to the road ahead of him and that he resorts to the suggestion that plaintiff in attempting to get further to his right got his wheels in loose gravel and this caused his car to szverve to the left and strike the approaching truck. (Italics ours.)
“It appears that the truck had just rounded a curve when the outside,— that is to say his proper lane of travel going north, was hanked so as to be somewhat higher than the inside lane which was the proper lane for a car going south, as it was the right hand side of the road. This physical fact lends credence to plaintiff’s testimony that he was on his proper side of the road as he approached the truck. There appears no earthly reason why he should have been anywhere else. On the other hand, the courts have recognized the tendency of motor vehicles, whose proper lane would be on the outside of a curve, to cut the curve and take the inside especially if traveling at any considerable speed and heavily loaded, as the pulp wood truck appears to have been. (Italics ours.)
“Considering that creditability of witnesses is a determining factor in any case where there is a sharp conflict in the testimony about what happened, having heard these witnesses, I was impressed by that given by the plaintiff concerning the salient facts preceding the accident. If he told the truth, and it is my belief that he did, then the truck driver was negligent in not watching the road ahead of him and failing, considering the nature of the road, to have his truck under proper control.
“The defendant alternatively pleads contributory negligence on the part of plaintiff, averring when he perceived his peril he should have come to a stop. Had he done so, this might or might not have avoided the collision. It might possibly have made matters worse. In any event he was confronted with an emergency not of his own making and with little time to weigh the probabilities.' He was warranted in believing that the truck driver would do what he should have done and it does not appear that he had the last clear chance of avoiding the accident by any action he might have taken.”
The Court of Appeal, by a majority opinion, reversed the trial court. It held [72 So.2d 615] :
“There is no question in our minds that the lower court was correct in finding the truck driver guilty of negligence. We feel, however, that the lower court erred in not concluding that the petitioner was guilty of contributory negligence. Had the petitioner, upon seeing the defendant truck approaching *1071 in the wrong lane, and after observing that the defendant’s truck would not or could not regain its proper lane, come to a stop, under the actual facts of this case, the truck would have had time to regain its proper lane of traffic and the collision would never have occurred.”
We cannot agree with this theoretical concept of the Honorable Court of Appeal as to the probability as to what would have happened if the plaintiff had acted as the court said he should have acted; and we are fortified in this belief — not only by the law of the road, the facts of the case, by the judgment of the trial court who saw and heard the witnesses, by the dissenting-opinion of the learned Judge of the Court of Appeal, but also by our colleague who made the investigation of the writ and recommended to the entire Court that it should be granted, which recommendation was unanimously adopted.
We agree with the trial judge that the proximate cause of the accident was the truck driver’s negligence in not watching the road ahead of him, and particularly is this true because he was driving a more dangerous instrumentality than the plaintiff; and, further, because of the very nature of the road itself, he should at all times have been on the lookout and have had his truck under proper control.
We do not believe that the cited law from Blashfield justifies the Court of Appeal in this decision. Looking at the physical facts. we have a gravelled road with no shoulder on plaintiff’s side. Had he cut to his extreme right he would have gone into the ditch and he might have caused serious injury and possible death to the dear ones in his car. If he had stopped (as the Court of Appeal held he should have done) he would have run the risk of turning around or over in the deep gravel and there might have been a more severe wreck than was had in this, case by the death of one or more of the parties.
Therefore, we say that we should not indulge in probability or in a mere theoretical concept, for to exchange a supposition for the facts (as stated by the trial judge), a theorj' for a reality, cannot be the proper basis for a decision. We must rely on the truth; the demonstrated physical facts— “these are the cornerstone” — “these are the column that nothing can move”. — “these are the stars that darkness cannot hide.” These are the true and only foundations for belief. Beyond the physical facts we have conjecture. It is conjectural to say that the driver of the car had he come to a complete stop, such would have given the truck time enough to clear the road. The truth of the matter is that he would have been taking a dangerous chance of applying his brakes in loose gravel. It is only conjectural to conclude as to what would happen. He could not move further on the right, because his car would have to fall in a deep ditch, and it is conjectural as to the extent of injuries, or death, that such a *1073 course would cause. In the world of probable or possible, every man has the right to guess for himself.
In Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 2, Section 919, such a quotation as authority for the Court of Appeal’s ruling has no application here on account of the factual situation.
The doctrine of last clear chance, as set forth in Rottman v. Beverly, 183 La. '947, 165 So. 153, cited by the defendant, is not applicable. There was no condition under which the plaintiff could possibly give the truck driver a last clear chance, because he had no means of personally avoiding the accident even though he discovered the peril of the situation.
There is no manifest error in the findings ■of the trial judge, either in fact or in the law. Therefore, the plaintiff should be given judgment in the sum of $10,000 as damages, as fixed by the trial judge. Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367; Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Roach v. Roach, 213 La. 746, 35 So.2d 597.
For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, and the judgment of the trial court, which awarded the plaintiff $10,000 as damages, together with legal interest, is affirmed; and the judgment of the district ■court in this respect is reinstated and is now made the judgment of this Court; all cost ±o be paid by defendant.