GLADNEY, Judge.
The instant case arises from an automobile collision which occurred about four miles south of Newellton, Louisiana, on U. S. Highway No. 65, March 3, 1950, shortly after 3 :00 o’clock P. M. Involved in- the accident were. John F. Ramsey, an employee of the Newellton Hardwood Lumber Company who was driving north a Jeep, and R. L. McDaniel, an employee of the Southern Bell Telephone and Tele *277 graph Company, Inc. The latter was driving' south in a Ford automobile. The two vehicles crashed into each other. Ramsey was seriously injured and McDaniel also received personal injuries.
In the instant case John F. Ramsey and the Employers Mutual Liability Insurance Company sue R. L. McDaniel and the Southern Bell Telephone and Telegraph •Company, Inc. The Employers Mutual Liability Insurance Company seeks the recovery of payments made by it to Ramsey under the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq. In a companion suit, No. 8340 on the docket of this court, entitled McDaniel v. Ramsey, La.App., 84 So.2d 282, McDaniel and his liability insurer, Service Fire Insurance Company of New York, instituted an action against Ramsey, the Newellton Hardwood Lumber Company and the latter’s liability insurer, The Fidelity Mutual Insurance Company. Both cases involve claims for personal injuries and property damage sustained in the accident. The two suits have been consolidated for trial and argument.
When the accident happened a slow rain was falling but the atmosphere was clear hnd visibility good. The blacktopped highway connects Newellton and St. Joseph in Tensas Parish and runs generally 'in' a northerly and southerly direction. At the scene of the collision the highway is level and is in a slight curve, which, however; does not affect visibility up to a distance'of 250 yards.' At this point the hard Surface is 19 feet wide with shoulders of T a'nd 8 feet on the east and west sides respectively. The highway is not marked by a center line. It has a crown with elevation of 4 inches. When the cars crashed the pavement was bumpy and wet and slippery.
! Plaintiff Ramsey testified that he was driving the Jeep automobile north along ■said highway at .a speed of about 25 miles •pet-, -hour and traveling 'entirely on his '¡right- or the .east s.ide of said highway ¡vyjíen..' M.cDaniel, driving. a Ford, automobile at .¡an excessive,,.rate of .s.pe.ed .and meeting the Jeep, cut or turned into Ramsey’s lane of traffic and thereby caused the accident. The testimony of McDaniel is to the effect that he was driving south wholly within his lane of traffic, the west side of the highway, at a rate of speed which he stated to be between 50 and 60 miles per hour, when he observed the approaching Jeep about one-fourth of a mile away driving in the center of the road; that as the Jeep came closer it angled more to its left but he thought it would turn back into its proper traffic lane; and that when the two vehicles were from 75 to 100 feet apart he endeavored without success to avoid the collision.
After a trial on the merits, the district court resolved that Ramsey and McDaniel were each guilty of negligence but that McDaniel definitely had the last clear chance to avoid the collision and accordingly- rendered judgment against McDaniel. The court also sustained the special defense, by Southern Bell Telephone and Telegraph Company, Inc., that McDaniel was not acting within the course and scope of his employment at the time of the accident, and rejected plaintiffs’ demands against Southern Bell Telephone and Telegraph Company, Inc. From the judgment so rendered McDaniel and plaintiffs have appealed. Ramsey died pending this appeal and his widow and daughter have been substituted as survivors to the right of action under LSA-C.C. art". 2315.
We first turn our attention to consideration of a motion to dismiss the appeal. Such a motion has been filed by Southern Bell Telephone and Telegraph Company, Inc. Mover principally relies upon the decision in McConnell v. Webb, 1954, 226 La. 385, 76 So.2d 405, 407. Therein pending the appeal- McConnell died and his widow was appointed admin-istratrix of her husband’s succession, and „in that capacity filed .a motion to be permitted to prosecute the suit as plaintiff-ap.pellant.'. After argument on a motion by •the defendant to abate the appeal, the Supreme-'Court held ¡that the .action .was on.e ■,in,;tórt and'.did jiot .survive the -dea,th of *278 plaintiff, and that the firmly settled rule that a personal nonheritable action for damages in tort abated with the death of the party litigant has not been abrogated. The court observed the repeated amendments to LSA-C.C. art. 2315, which from time to time have provided for survival of tort actions in certain designated persons and stated:
“ * * * And in this connection it may be well to observe at this point that it is not any of the survivors of the deceased plaintiff, named in Article 2315 of the LSA-Civil Code, who is seeking to prosecute the appeal in this case, but the widow who is appearing solely in her capacity as ad-ministratrix of his succession. Any award that might be made therefore may not go to any of the decedent’s beneficiaries under Article 2315 LSA-C.C., but to his estate and for the benefit of his creditors, if any, or any other interested parties as well as his heirs. * * * ”
We note that LSA-R.S. § 3349 reads as follows :
“There are no exceptions to the rule that an action does not abate by the death of one of the parties thereto after suit has been filed. This section shall apply to all actions now pending as well as those which may be hereafter instituted. No act of the legislature heretofore passed, nor any acts hereafter passed shall be construed as making an exception to this rule, unless such act specifically and specially makes an exception thereto. (Acts 1946, No. 239, Secs. 1-5; 1954, No. 59, Sec. 1.)”
Prior to the 1954 amendment, LSA-R.S. 13 -3349 and Code of Practice art. 21 included language that “There are no exceptions to the rule that an action does not abate by the death of one of the parties thereto after issue joined * * (Emphasis supplied.) We think it was not the intention of the Supreme Court in McConnell v. Webb to annul the plain provisions of LSA-C.C. art. 2315 which expressly provide for survival of a tort action in favor of a widow and children and others therein expressly .named. The cited case merely holds that a tort action does not survive in favor of the administratrix of the succession. Accordingly, the motion to dismiss the appeal is denied.
Now we revert to the factual and legal issues herein presented. Plaintiffs allege in support of their cause of action that McDaniel was negligent in driving at an excessive rate of speed on the slick, wet, blacktopped road, in failing to keep a proper lookout, and in suddenly turning into the path of Ramsey’s automobile. In addition to the above specifications of negligence plaintiffs invoke the last clear chance doctrine. To the contrary Ramsey is charged by defendants with negligence in driving on the wrong side of the highway, in failing to maintain a proper lookout, in failing to return to his right side of the road after he had created an emergency, and in failing to retain proper control of his vehicle. Defendants plead in the alternative, the contributory negligence of Ramsey.
The record contains 275 pages of testimony, much of which is conflicting. Certain facts, however, are not disputed. These are: that the weather and road conditions were as hereinabove stated; and that immediately before the collision McDaniel was driving at a speed of approximately 50 to 60 miles per hour and Ramsey at a speed of 25 miles per hour. There remains for the court to ascertain the true facts bearing upon the fault of either or both of the drivers. When the case was concluded and argued the district judge was of the opinion that Ramsey was driving on the wrong side'of the highway and not maintaining a proper lookout and was thereby guilty of negligence. He further found McDaniel was guilty of negligence in driving at an excessive rate of speed, and in not bringing his vehicle under closer control when he observed the Jeep some distance away on its left side or in the center of the road. The: *279 court then proceeded to sustain plaintiffs’ alternative plea that McDaniel should be held liable under the last clear chance doctrine. On this point the court gives the following reasons for its decision:
“Counsel pleads alternatively that McDaniel had the last clear chance to avoid the accident and gives his reasons therefor that McDaniel testified that he saw the Ramsey jeep about a quarter of a mile away coming toward him, and that the jeep was in the middle of the road angling over to his side of the road; that he continued driving straight ahead believing that Ramsey would pull over to his side of the highway; that the jeep continued on the wrong side of the road and that when the vehicles were five or ten feet apart, he blew his horn. McDaniel did state he took his foot off of the accelerator when the jeep was seventy-five to a hundred feet away from him; that in the last few seconds he attempted to cut to his left but it was too late. We must remember that the pavement was wet and slick which required extreme caution and that McDaniel was driving at an excessive rate of speed under such conditions; that he saw the jeep in its position on the road by his own testimony more than a thousand feet away but he did nothing about this until he was a hundred feet from the approaching vehicle and this was too late.
“We must remember also that the Bruton car was following McDaniel and, to show the dangerous condition of the road, Bruton testified that he saw the imminence of collision, applied his brakes and skidded into the ditch.
* * * * * *
"Counsel for McDaniel contends McDaniel was guilty of no negligence and that therefore, this doctrine does not apply, quoting the landmark case of Rottman v. Beverly [183 La. 947], 165 So. 153.
“This Court has previously gone into the question of McDaniel’s knowledge of a dangerous situation which became apparent at the moment he discovered Ramsey was driving on the wrong side of the road, but, despite this knowledge, he continued to drive at an excessive speed until the last moment and only then did he take evasive action to try and avoid the accident.
“Therefore, it is the opinion of this Court that while Ramsey was negligent, McDaniel definitely had the last clear chance to avoid the collision. This Court distinguishes the present case from Lacy v. Lucky [19 La.App.743], 140 So. 857, and Goodson v. Shuster’s Wholesale Produce Co., Inc., 10 La.App. [486], 489 [120 So. 689], in that McDaniel knew and could see that Ramsey was angling toward the left and continued to do so up to an instant before the collision.
'“McDaniel was not confronted with the sudden, unexpected emergency but a potentially continued emergency which should have put him on guard that Ramsey’s conduct in driving was latently dangerous.”
We find ourselves in complete agreement with the rulings of the judge wherein he held Ramsey and McDaniel negligent. The evidence has convinced us Ramsey was wrongfully on his left side of the highway and could not have been keeping a proper lookout. We are not unmindful of the testimony of Ramsey, Smedley, King and Tatum indicating the contrary might be true, but this evidence, in our opinion, is greatly outweighed by the testimony of McDaniel, Brewton, Elliott and State Trooper H. Lee Arledge. We think credence should especially be given to Arledge’s testimony which was supported and refreshed by his official record made within a short time after the accident and before the vehicles had been moved. Nor do we entertain any doubt McDaniel was driving at an excessive rate of speed under the existing conditions *280 and in violation of the Motor Vehicle Act, and particularly section 227 thereof, LSA-R.S. 32:227, which forbids the operation of a motor vehicle on state highways at other than a reasonable and proper speed under the circumstances, or at a speed endangering the persons or property of others.
After most thoughtful consideration we think the trial judge erred in giving effect to the last clear chance doctrine. Manifestly, in order to determine if McDaniel had acted with reasonable promptness and thereby could have avoided the accident, his opportunities of escape and his endeavor to that end should be subject to close scrutiny. Briefly put, the outcome of the issue depends almost entirely upon his conduct. We have, therefore, carefully weighed his testimony and its implications.
McDaniel said he was first conscious of the approaching Jeep when it was around a quarter of a mile away traveling in the middle of the road while he was driving in his proper traffic lane; and that the closer the Jeep got to him the more it gradually angled to its left side. He explained the accident took place in the following manner:
“Well, the closer the Jeep got to me the further on my side of the road he got, so I took my foot off the gas thinking he would pull back over and when we were right on each other— last minute resort I cut to the left. And I could see the man — he was looking off to his left hand side.”
He further testified that just before the collision occurred he sounded his horn and Ramsey cut back at about the same time. He said the Jeep was more on the west side of the road when the two vehicles came together. On cross-examination McDaniel testified the Jeep was completely on the west side of the highway when the two cars were but 75 or 100 feet apart, and it was then that he removed his foot ■from the gas; that when the vehicles were but 5 or 10--feet apart he blew his horn ■and pulled hard to the left. Asked why he cut to the left -instead of the right, he answered:
“A. Well, what little time I had to think, I believe if I had cut to the left the man would have run right through the door where I was sitting; the left side of my car.
“Q. You mean you had cut to the right? A. Cut to the right, yes.”
The witness somewhat qualified the estimated distance between the two meeting vehicles given in his testimony by saying he didn’t “know exactly how far it was from me”, and “I couldn’t swear how far it was from me.” Perhaps the testimony of this witness, as well as that of the others herein, should be appraised with some consideration given to the fact that they were testifying some two years and nine months after the accident. However, we cannot accept as accurate the answer of McDaniel as to the cars being only 75 to 100 feet apart when he removed his foot from the gas and waited for the Jeep to return to the east side of the road. ' Nor can we believe that McDaniel could have initiated any movement whatsoever when the two vehicles were only from 5 to 10 feet apart. We say this because the automobiles were headed directly toward each other and their speeds were 50 to 60 miles per hour for the Ford, and 25 miles per hour for the Jeep, or a combined speed of from 75 to 80 miles per hour. And so, assuming the combined speeds to have been 75 miles per hour prior to the time McDaniel removed his foot from the accelerator, we know the intervening distance was being lessened 116 feet every passing second. Thus, during a single reaction time of three-fourths of a second, the intervening distance was shortened 87 feet. Reference is made to the tables which accompany the article of Hollinsworth B. Barret, entitled “Mechanics of Control and Lookout In Automobile Law”, Tulane Law Review, Vol. XIV, pages 492, 493, 503. In 'our opinion 100 feet was an insufficient distance within which McDaniel could decide to remove his • foot' -from the ■ accelerator, momentarily wait to see if the Jeep would *281 move over, decide to blow his horn and turn to the left, and finally execute this maneuver. We do believe McDaniel made the movements about which he testified, but we are also certain the two automobiles were much farther apart than stated when he began his steps to avoid the emergency which he faced.
We deem it pertinent to inquire how much time elapsed between the moment McDaniel decided to remove his foot from the accelerator and the instant of the collision. We think this can safely be answered by saying more than seconds passed. This is true because during that period' of time McDaniel decided upon and executed at least two separate movements in the control of his car — that is to say, he removed his foot, waited, and then sounded his horn and turned left. Omitting the time which elapsed during the waiting interval, two reaction periods were utilized by McDaniel, or time equivalent to l^/z seconds, during which the Jeep traveled 54 feet and the Ford 132 feet or a total of 184 feet. Thus it is proper to conclude that at the instant McDaniel removed his foot from the accelerator of the Ford the Jeep was more than 184 feet away. Even then, we think, it was still possible for Ramsey to have extricated himself from the danger by turning the Jeep back into its proper traffic lane, and McDaniel was waiting and expecting Ramsey to do just this.
The views which we entertain in the instant case are expressed in the dissenting opinion of Judge Cavanaugh in Davis v. Lewis & Lewis, La.App., 1954, 72 So.2d 612, at page 618, wherein he quotes the trial judge:
, “ ‘The difficulty with this rule is that, although a traveler on the, right may know that, if the on-coming vehicle maintains its, course, there will inevitably be a collision, he can not know that the driver of such car will not turn in time to avoid a collision, in which event if he himself should turn to the left in violation of the ■rules of the road he would probably precipitate the catastrophe which he is seeking to avoid, and liability for which it would be hard for him to escape. It might seem better for him either to hold his course if a further turn to his right is impracticable or to stop and rely on the other driver changing his course in time, and so it is held in some jurisdictions.’ Blasffield, Vol. 2, Secs. 919, 920 and 921, pages 92-105; Manuel v. Vidrine, 9 La.App. 446, 119 So. 542; Cutrer v. Jones, La.App., 9 So.2d 859; Kennedy v. Opdenweyer, 11 La.App. 532, 121 So. 636 [123 So. 906]; Ford, Bacon & Davis, Inc., v. Shaw, 8 La.App. 751; Smith v. Baker, La.App., 59 So.2d 714.”
The dissenting opinion therein and the ruling of the trial judge quoted above were sustained by the Supreme Court when that court affirmed the judgment of the district court. See: Davis v. Lewis & Lewis, 1955, 226 La. 1064, 78 So.2d 174.
In our opinion McDaniel could only have speculated whether or not Ramsey would continue to maintain his position in the center of the highway and wholly disregard the approaching Ford automobile. It is logical, except where the circumstances are most unusual, to expect a vehicle not entirely on its side of the road to resume its proper position as long as it has an opportunity to do so. Under the circumstances as here presented, we are of the opinion that McDaniel was justified in believing that Ramsey would extricate himself from the -position of danger. There were no other vehicles on the highway to prevent Ramsey from doing so. Furthermore, the accident sustained by Brewton and Elliott when upon the sudden application of the brakes on Brewton’s Pontiac, the car skidded into a ditch on the west side of the highway shows plainly road conditions prohibited any sudden braking of the Ford.
We are in disagreement, therefore, with the holding of the judge a quo, but only insofar as it maintained the last clear chance doctrine and rendered, judgment *282 in favor of the plaintiffs herein. It follows from our findings that the negligence of Ramsey and McDaniel was concurrent and suffices to bar recovery by either.
Considerable testimony was adduced on behalf of Southern Bell Telephone and Telegraph Company, Inc., to show that McDaniel at the time of the accident was not acting within the course of and scope of his employment. In view of the conclusion above reached, we pretermit any decision upon the issue thus presented.
The judgment from which appealed is reversed and set aside and the demands of plaintiffs are rejected. Costs shall be paid one-half by plaintiffs and one-half by McDaniel. Southern Bell Telephone and Telegraph Company, Inc. is not taxed with costs.