107 So.2d 309 (1958)
Mrs. Eunice C. WOOD, Plaintiff-Appellant,
v.
MANUFACTURERS CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 8940.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1958.
Rehearing Denied December 19, 1958.
*311 Dhu & Lea S. Thompson, Monroe, for appellant.
Theus, Grisham, Davis & Leigh, Monroe, for appellee.
AYRES, Judge.
This is an action in tort. The damages sought are for personal injuries sustained in an automobile accident January 29, 1957, on U.S. Highway 165, about seven miles north of Monroe, Louisiana. From an adverse judgment plaintiff appealed.
The locale of the accident may be first described. The highway, of concrete paving twenty feet wide, alongside of which are the usual shoulders of six feet in width, runs in a general north and south course. It constitutes a main thoroughfare between Bastrop and Sterlington and Monroe, and is level and straight except for a slight curve to the right beginning a few hundred feet north of the scene of the accident.
Involved were two vehicles. One was a Chrysler Sedan owned and operated at the time by James R. Wood, plaintiff's husband, who was accompanied by plaintiff and a minor daughter occupying the rear seat and a minor son seated beside him on the front seat. They were returning to their home in Delhi, Louisiana, from a visit with relatives in Camden, Arkansas. The other, a Plymouth automobile, was driven by one Ivory Dotson, who was also accompanied by several persons, the exact number not being shown. The vehicles were proceeding in opposite directions, the Chrysler to the south, the Plymouth toward the north.
At the time of the accident, about 5:45 to 6:00 o'clock p. m., the highway was wet from a rain which had been, and was then, falling. Made defendant is the Manufacturers Casualty Insurance Company, the liability insurer of the Wood automobile.
The negligence charged to James R. Wood in the operation of his automobile as constituting a proximate cause, or as a contributing cause, of the accident, consists of his excessive speed and of his failure to keep his automobile under proper control, or to materially reduce his speed, or to stop, or to take effective action to prevent the accident, such as by timely driving to the shoulder of the road. Defendant denied that plaintiff's husband was negligent, in any respect, in either causing or contributing to the occurrence of the accident, and alleged that the accident resulted solely from the gross carelessness and negligence of Ivory Dotson, notwithstanding Wood's best and timely efforts to avoid the same.
These facts are undisputed. There was no southbound traffic in the vicinity of the accident other than the Wood car. Northbound traffic included a dairy truck in the lead, driven by Luther Ray Williams at a speed of about forty-five miles per hour, followed closely by two pulpwood trucks and two automobiles, the latter of which was the Dotson Plymouth, approximately 150 feet behind the lead vehicle. Wood was driving 55 to 60 miles per hour. The Dotson car crossed the center line of the highway, ostensibly to pass the vehicles in his front. To avert a head-on collision in the Wood car's traffic lane, both Chrysler and Plymouth, almost simultaneously, took to the west shoulder of the road with the result of that which they attempted to avoida head-on collision occurring on the shoulder. Both cars were demolished. The Chrysler came to rest in the ditch on its right-hand side of the highwaythe Plymouth near the center of the road. The motor of the Plymouth, *312 however, was completely severed from the car and knocked into the ditch on the east side of the highway. The battery landed in a field beyond the highway right-of-way. Dotson was killed and the other occupants of his car were scattered along the pavement. The occupants of the Wood car, all injured, remained in the car.
A dispute exists, however, as to some of the material aspects of the accident. For instance, plaintiff contends that her husband saw the Dotson car when a quarter of a mile away in its left-hand lane, attempting to pass a line of vehicles. Notwithstanding, he failed to reduce his speed, apply his brakes, or turn to the shoulder of the road until it was too late to do anything effective to prevent the collision. She further contends her husband saw, or, with reasonable diligence should have seen, the Dotson car in a position of peril and realized, or should have realized, on account of the line of cars to his right, that Dotson could not bring his car back in line in his right-hand lane. Thus, it is contended Wood had the last clear chance to avoid the accident which he allegedly failed and neglected to do when he had both time and opportunity to do so. On the other hand, defendant contends that Dotson suddenly came out into Wood's lane of traffic so near in front that Wood had no opportunity to do more than he did, which was to apply his brakes and take to the shoulder of the road. The gravamen of plaintiff's contention is that Wood saw the oncoming car in his lane of travel for a quarter of a mile and, therefore, knew that if such a course was continued, a head-on collision would occur, notwithstanding, no action was taken to avoid the impending accident.
This position, however, is not supported by the evidence, at least, not by a preponderance of the evidence. Wood gave an account of the occurrence in answer to a series of questions:
"Q. Now, Mr. Wood, what did you do as youafter you saw the car pull into your lane of traffic, what did you do? If anything? A. Well, I took my foot off the accelerator and after heI thought he was going to get back in his own lane and after a few seconds when I saw that he wasn't going to get in his own lane then I started putting on the brakes slowly at first because as I said, it was raining and the pavement was wet and when I saw that he wasn't going to make it back in his lane, well I started putting on the brakes more firmly and at the same time I started pulling off to the right. Of course by that time we were practically together.
"Q. Now, what happened? A. Well, as I pulled off to the right, he must have had the same thought at the same time and he pulled off too trying to get out of my way and we just pulled off on the shoulder and hit head-on.
"Q. Now then, how far off of the road or what position did he get and what position did you get when the collision occurred? A. Well, when the collision occurred I believe my right wheels were on the shoulder of the roadnow I couldn't tell exactly, it all happened so fast, but I would say that myboth of my right wheels were off on the shoulder. Now my left wheels could have been off, I don't know for sure and he was in approximately the same position I would say."
Mrs. Wood, according to her testimony, was paying no attention to the highway or her husband's driving but, on application of the brakes, she looked up and saw the lights of the Dotson car in front, followed immediately by the crash. According to Williams, only momentarily before meeting the approaching car, one of the pulpwood trucks passed the dairy truck, whereupon he ascertained, by means of his rear view mirror, that all the other vehicles in the rear were in line. On the near approach of the Chrysler he again looked to his rear and at that time the last of the cars, which *313 was later determined was the Dotson car, had crossed the center line and was in its left lane, alongside the rear of the next vehicle. At that time the Chrysler, meeting the Williams vehicle, was slowing down and turning right to the shoulder of the highway. The Dotson car on beginnning its passing movement was, according to Williams, only 100 to 150 feet behind the dairy truck. Wood testified that when he steered his vehicle to the shoulder the Dotson car was about 100 feet away.
That Dotson was guilty of negligence admits of no argument. The statutory rule is that the drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other, at least 200 feet before meeting, one-half of the main traveled portion of the highway; LSA-R.S. 32:232.
The rule is likewise well settled that a motorist traveling on the right side of the highway has the right to assume that one traveling on the wrong side will yield the right-of-way and return to his proper lane in sufficient time to avoid a collision. Goodson v. Schuster's Wholesale Produce Co., Inc., 10 La.App. 486, 120 So. 689; Kennedy v. Opdenweyer, 11 La.App. 532, 121 So. 636; Pruett v. Brantley, 13 La.App. 208, 127 So. 2; Lacy v. Lucky, 19 La.App. 743, 140 So. 857; Bolton v. Glowaski, La. App., 15 So.2d 536.
However, in an assignment of errors, plaintiff contends that Wood's acts in driving at 55 miles per hour or more, under the then prevailing weather and highway conditions, as well as his failure to reduce his speed when he saw the Dotson car a quarter of a mile away and the string of cars to Dotson's right preventing Dotson's return to his proper lane of travel, constituted, at least, contributory negligence on his part. Had Wood seen the Dotson car at such distance and on the wrong side of the road and at the time realized, or should have realized, Dotson could not return to his proper lane of travel, it could be but concluded his continuous movement forward, without materially lessening his speed and without turning aside, would constitute gross negligence, amounting to an almost willful disregard of his own life and safety, as well as that of his wife and children. Other than the speed of the Wood car the evidence does not support the position taken. The contention is not only refuted by Wood's own testimony but by that of Williams as well. As pointed out, Wood testified as soon as he realized Dotson was not returning to his proper lane of travel, which he expected all along, he, Wood, applied his brakes and turned off the highway to the shoulder. Williams testified Wood was steering his vehicle to the shoulder when they met, at which time, as has already been shown, Dotson was only 100 feet to 150 feet behind the Williams' vehicle.
However, plaintiff insists that Wood's speed was excessive in view of the aforesaid weather and highway conditions and, as such, constituted at least a contributing factor or cause in the occurrence of the accident. It is conceded, however, that the general speed limit on highways, outside of any town or village, is 60 miles per hour; LSA-R.S. 32:223, which, however, is limited by the provisions of LSA-R.S. 32:227, providing that no person shall operate any vehicle upon the highways of this state at other than a reasonable and proper speed under the circumstances. Plaintiff urges that by her husband's speed there is created a prima facie case of fault and responsibility against him by the aforesaid statute which provides that whoever operates a vehicle in excess of the aforesaid limitations shall be prima facie at fault and responsible for any accident proximately caused by such operation. However, negligence alone in the operation of a motor vehicle does not necessarily give rise to a cause of action. In order to be actionable the fault must result in injury or damage and, then, only if such negligence is a proximate cause of the injury, that is, the injury must be the natural and probable consequence of a negligent act or omission *314 which an ordinarily prudent person ought reasonably to have foreseen might probably result in injury; 60 C.J.S. Motor Vehicles §§ 251 and 252, page 613; Cone v. Smith, La.App., 76 So.2d 46.
In the instant case, although it was raining and dark, the highway was straight, broad and level with no other southbound traffic in the vicinity, and with only five or six vehicles proceeding in the opposite direction. Wood's speed, should it be conceded excessive under the circumstances, could not be said to constitute a cause of the accident, that is, a cause or a factor without which the accident would not have occurred, for the record establishes that the sole cause of the accident was the negligence of Dotson in suddenly and unexpectedly swerving across the center line of the highway in the lane of travel of the Wood car in his effort to execute a passing movement. Under comparable circumstances in Cone v. Smith, supra, we held negligent that driver of the one of two approaching cars who suddenly crossed the center line of the highway into the traffic lane of the other, notwithstanding that the other was traveling at a speed of 85 to 90 miles per hour. In gauging the fault which may be attributable to a motorist who was operating his vehicle in obedience to positive law, such as at a lawful speed and in a proper traffic lane, one should be convinced that the dereliction was most substantial and that it was such a direct factor that without it the accident would not have occurred; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292. Had Wood been driving 25 or 30 miles per hour, under the circumstances of Dotson suddenly crossing the center line into Wood's lane of travel, the accident would, as likely, have happened.
From the facts as established in the record, and as referred to hereinabove, it could be but concluded that the Chrysler and the Plymouth were only 150, or possibly 200, feet apart when the Plymouth crossed into the Chrysler's lane of travel, and that, thereafter, Wood did all that a reasonable and prudent man could have done under the circumstances. He applied his brakes and directed his car out of that lane of travel. Therefore, whatever dereliction of duty, if any, is chargeable to Wood, such was neither a proximate nor a contributing cause of the accident.
No error of judgment can be charged to Wood. Even so, when one is brought face-to-face with unexpected danger brought about by the gross fault of another, he cannot be held to be contributorily negligent upon his failure to exercise the best judgment. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Davis v. Lewis & Lewis, 226 La. 1064, 78 So.2d 174; Hagaman v. Bankers Indemnity Ins. Co., La.App., 7 So. 2d 390; Jacob v. Edwards, La.App., 171 So. 165; Lacy v. Lucky, supra; Willis v. Standard Oil Company, 17 La.App. 217, 135 So. 777; Finance Security Corp. v. Alford, La. App., 63 So.2d 872; Brock v. Southern Farm Bureau Cas. Inc. Co., La.App., 94 So. 2d 492; Peeples v. Dobson, Maryland Cas. Co., La.App., 99 So.2d 161; Litton v. Samuel, La.App., 98 So.2d 534.
Neither does the record show that the last clear chance doctrine has any application in this case. The facts as established by the record, and as referred to hereinabove, refute such contention. There is no showing that Wood, on seeing Dotson in a perilous position, could have done more to avoid the accident. Nor does it appear Wood, by the exercise of more diligence, could have sooner discovered Dotson's peril.
For these reasons the conclusion is inescapable that the accident resulted from the gross negligence of Ivory Dotson and that, accordingly, the judgment appealed, being, in our opinion, manifestly correct, is affirmed at appellant's cost.
Affirmed.