FRUGÉ, Judge.
This case was consolidated for the purpose of trial with the case of Dies v. Liberty Mutual Insurance Company, et al, 208 So.2d 714 (La.App.3d Cir., 1968).
This case arises out of collisions involving a dragline carried on a lowboy trailer, a pick-up truck, and a Pontiac automobile. The primary defendants in this case, as well as in the case consolidated herewith, are: Louis Larive, the driver of the Mack tractor, pulling a dragline on a lowboy trailer; his employer, Central Excavation Co., Inc.; Central Excavation Company’s insurer, Liberty Mutual Ins. Co.;[1] Bobby G. Miller, driver of a pick-up truck (following the Mack truck), and his insurer, the Hanover Ins. Co. The plaintiff in this case is Betty Joyce Cormier Bellard, suing in her own capacity and as natural tutrix for her six children for the death of her husband, Paul Bellard, who was a passenger in the Pontiac vehicle driven by Henry Fonte-not. In the case consolidated herewith, Charlene Godeau Dies sought recovery for the wrongful death of her husband. This last case was compromised after final judgment, and there remains nothing for us to pass upon other than a third party action brought by the primary defendants in both cases.[2]
The trial judge rendered judgment in favor of the plaintiff, Betty Joyce Cor-mier Bellard and against the defendants, Louis J. Larive, Central Excavation Co., Inc., and Liberty Mutual Ins. Co. in solido in the total sum of $147,996.00. All the primary defendants appealed. Plaintiff, Mrs. Bellard, also appealed, requesting that the judgment be amended so as to render the defendants Bobby Miller and his insurer, Hanover Life Insurance Co. also liable to her, and requesting an increase in the award made in her favor.
The factual findings of the trial court are largely as follows:
“On the night of June 12, 1966, John Dies, Chester Boudreaux, Paul Bellard and Henry Fontenot comprised the crew of a workover rig belonging to Lafayette Well Service on location in Cameron Parish. They were working a twelve hour shift, having begun work that night at 8:00, and being relieved at approximately 7:45 on the morning of June 13th. After being relieved, they cleaned up, Bellard made the necessary reports, and they boarded a Pontiac automobile for the trip home. The Pontiac was owned and operated by Fon- *708 tenot, and, at the time of the accident it was heading east on Highway 82.
“At dawn of the same day, Louis Lar-rive [Larive], Wirt Fontenot and Bobby Gene Miller were dispatched from Lafayette to pick up a dragline belonging to their employer, Central Excavation Company, on a location near Kaplan. * * * [T]he dragline was loaded by Wirt Fon-tenot, the operator, on a lowboy or trailer attached to a Mack tractor. The boom of the dragline was faced towards the front of the tractor, the dragline was centered on the lowboy, and the bucket was secured behind the dragline. The dragline tracks extended over the bed and outside wheels of the lowboy by some twenty-one inches on each side. It measured eleven feet, seven and three-fourths inches wide, measuring from the widest outside point of each track. It was secured to the lowboy by a chain binder at a point near the rear of each track, and a red flag approximately twelve inches square was attached to the top part of the chain of each binder on the outside of each track.
“After the dragline had been loaded, Larrive drove the Mack truck with the attached lowboy upon which the dragline was secured to Kaplan. There he stopped for and was given certain permits for the transportation of the dragline. Though it seems that the dragline should not have been moved without having first acquired the permits, the same was nevertheless accomplished. Having secured the permits, Larrive, with Wirt Fontenot seated to his right in the tractor cab, and Miller following in Wirt Fontenot’s pick-up which was under lease to Central, began their journey. Though permit permission restricted travel to certain routes, some routes other than those designated were traveled.
“Between 8:30 and 9:10 a. m., a collision occurred between the Pontiac driven by Fontenot and the vehicle being driven by Larrive on Highway 82 in Cameron Parish. At the time of the accident, the Pontiac was being driven in an easterly direction, and the Mack truck in a westerly direction. The highway at the point of the collision was a two-lane blacktop. The center of the blacktop was delineated by a white, four inch broken line.
“Immediately preceding the accident, Bobby Gene Miller was following behind the Mack truck and dragline at a distance of 250 to 300 feet. He saw the Pontiac approaching while it was some 1000 feet distant. The driver was erect, and the automobile was in its proper lane of travel. The driver of the Mack tractor, too, saw the approaching Pontiac while it was some distance away.
“The accident occurred just as the Mack truck began entering, and the Pontiac leaving, the third curve east of the Pan-Am Dock Road. The curve was flat, not banked, and turned southerly for westbound vehicles. The west bound lane of the highway, at the widest point where the accident could have occurred, was not more than ten feet. The shoulder, which ran on the same level as the highway, was of shell and pea gravel, and at its widest point was not more than three and one-half feet, and fell off abruptly into a much lower elevation.
“It had rained rather hard prior to the accident. It was raining when the Mack truck crossed the Superior Bridge spanning the highway, and it was raining at the time of the accident, the severity of which is unknown, and it rained for a short time following the accident. The rain was falling from a southeasterly direction.
“At the time of the accident, the left rear wheels of the trailer were approximately six inches inside the centerline of the highway, and the left track of the dragline extended over the center of the centerline by approximately thirteen inches.
“After crossing the Mack tractor, the left front of the Pontiac collided with the protruding left track of the dragline *709 at the approximate point where the track was secured by the chain binder. The Pontiac then veered to the south side of the highway, crossed to the north side of the highway, and collided with the pick-up being driven by Miller.
“Examination of the roadway where the accident occurred failed to reveal skid marks, and examination of the north shoulder of the highway did not indicate that the right wheels of the Mack tractor or lowboy had left the highway at any time immediately prior to, or at the time of the accident.
“Though there were flashing amber lights on the front of the Mack tractor, the foremost part of the dragline tracks were unflagged, and the evidence does not reveal that the driver of the Pontiac, while coming out of the curve, apprehended or had reason to believe that the left track of the dragline was protruding into his lane of traffic.”
The trial judge also found that the evidence was insufficient to establish that the vehicle driven by Mr. Fontenot at any time prior to the occurrence of the accident crossed the center line of the highway, into the lane of the oncoming Mack tractor and trailer. The trial judge thereby concludes that: “[T]he sole cause of the first and second collision and resultant deaths, was the negligence of Louis Larrive, employee of Central Excavation Company, in driving under such conditions and in such manner that the left track of the dragline protruded across the centerline of the highway. Knowing the imminent danger to oncoming traffic, it was his duty to be extremely cautious at all times, especially considering the weather conditions.”
The defendants-appellants’ basic contention is that the trial judge erred in holding Louis Larive guilty of negligence in permitting the tracks of the dragline to extend into the East-bound lane of traffic, and in finding Henry Lee Fontenot free from negligence proximately causing the accident.
It is hornbook law that the findings of the trial court will not be upset on appeal except when his findings are manifestly erroneous. Especially is this true in a case such as this where the testimony is voluminous and conflicting on many issues of fact, thereby requiring the trial court to consider the veracity of the many witnesses. Fairman v. Robert, 181 So.2d 459 (La.App. 1st Cir., 1959); Broussand v. Dickerson, 166 So.2d 92 (La.App.3d Cir., 1964); In Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276, 278 (1964) our Supreme Court observed: “It has even been said that where irreconcilable facts are presented ‘an appellate court will not reverse the judgment of the trial court, if the evidence of the successful party, when considered by itself, is sufficient to sustain the judgment.’”
First we shall consider whether or not there was sufficient evidence to sustain the trial judge’s finding that Mr. Larive was negligent. Crucial to this determination is whether or not the tracks of the dragline which was carried on the lowboy trailer .invaded the opposite lane of traffic at the time of the collision with the Fontenot vehicle.
Bobby Miller, the driver of the pick-up truck following the Mack truck, was in the best position to know at the time of the collision if the trailer and its load remained in its proper lane of travel. He testified that the rear left wheels of the trailer carrying the dragline were about six inches from the center line of the highway at the time of the impact. Since the tracks of the dragline extended twenty-one inches from the trailer on both sides, under this testimony, the tracks of the tractor were protruding at least one foot into the opposite lane of travel, in which Mr. Fontenot was proceeding. At one point Mr. Miller stated, however, that he did not believe that the tracks of the dragline actually extended into the other lane when the collision occurred. Mr. Miller also said that he thought that the right rear wheels of the tractor had gone onto the north shoulder of the highway be *710 fore the accident occurred, but this belief was from his noticing some pea gravel fly into the air and was not an actual observation of the wheels of the trailer at the time.
The existence of tire marks from the lowboy on the north shoulder of the highway was quite a controversial point of evidence. The investigating State trooper testified that he looked for tire marks along that shoulder and could find none. Mr. Larive and Wirt Fontenot both testified that they saw some tire marks. Mr. Larive stated he found double wheel impressions which extended about 100 feet along the north shoulder near the point of impact with the Fontenot vehicle. Wirt Fontenot, however, testified that he saw a single tire impression which extended only five or six feet in length. Mr. Larive testified that he believed his truck was well within its own lane of travel and that he even pulled to the right somewhat more upon entering the curve after seeing the oncoming vehicle driven by Mr. Fontenot.[3] But from all the testimony, we feel that the evidence is inconclusive to show that the right wheels of the lowboy trailer were actually on the shoulder at the time of impact.
As evidence further supporting the findings of the district judge, Mr. Larive stated that at no time did he see the vehicle driven by Mr. Fontenot cross the center line into his lane of traffic, although he noticed that vehicle “hugging” the center line as it came around the curve. Therefore, presumably, the Fontenot vehicle was in its proper lane of traffic as it passed the front of the Mack truck. Bobby Miller also stated that he saw the Fontenot vehicle coming around the curve but noticed nothing unusual about it and that that vehicle remained, as far as he could tell, in its proper lane of traffic up until the instant of impact.
Although the State trooper testified that “most” of the debris found on the highway was on the north travel lane, which was the lane .in which the tractor trailer was proceeding, this testimony is inconclusive as to the point of the initial collision, because, after the Fontenot vehicle struck the tracks of the dragline, .it proceeded into the north lane of traffic and struck the truck driven by Bobby Miller, which was practically stopped in that lane. Therefore, it would appear that most of the debris would naturally be in that north lane of traffic. A witness for plaintiffs, who was perhaps the first to reach the scene of the accident, testified that he saw glass and some chrome in the south lane of traffic, about where the initial impact was made between the Fontenot vehicle and the drag-line. From all this, we are unable to say that the trial judge was manifestly erroneous in his finding that the tracks of the dragline protruded into the south lane of the highway and that the initial point of impact was in that lane. Therefore, we feel that the record supports the district court’s finding that Mr. Larive was negligent in permitting the tracks of the dragline to extend into the south lane of travel in a curve on a narrow roadway and that his negligence was a proximate cause of the accident.[4] The next issue, therefore, is whether or not Henry Fontenot, driver of the vehicle which struck the tracks of the dragline, was guilty of contributory negligence.[5]
*711 As we have stated above, there is no affirmative showing that Henry Fontenot drove his car across the center line of the highway at any time until after the initial collision. Therefore, the only question of negligence which remains to be disposed of in regard to Mr. Fontenot is whether or not he should have seen the tracks of the drag-line protruding into his lane of traffic in time to have reasonably avoided striking them under the conditions prevalent at that moment. As to this issue, the trial judge made these remarks:
“While it is true that the driver of the Pontiac certainly must have seen the Mack truck, the Court .is of the opinion that, as he rounded the curve, he could not have apprehended the protruding dragline track until it would have been too late for him to take evasive action. The front of the track was not flagged, it was raining, and he was at all times in his proper lane of travel. The Court does not feel that the evidence justified a finding that he contributed to the accident.”
Even upon seeing the Mack truck proceeding toward him, Mr. Fontenot could properly assume that the truck or its load would not intrude into his lane of travel until he acquired notice of such fact. C. F. Launey v. Traders and General Ins. Co., 169 So.2d 757 (La.App.3d Cir., 1964). The circumstances under which Mr. Fontenot struck the protruding track of the dragline are as follows:
His vehicle was coming at highway speed on a wet surfaced highway around a right-hand curve which was unbanked and which had a total width of approximately twenty feet. Visibility was rather poor, and, the trial court found that it was raining to some extent at the time of the accident. The dragline tracks, which extended twenty-one inches from the trailer bed itself were flagged only on the rear on each side and not on the front and rear, which were (by the terms of the permit under which this load was being carried) the widest points on the dragline. It is possible that the Mack truck was throwing out spray which obscured the visibility of the protruding tracks of the dragline to some extent. The initial impact occurred in a curve, which fact rendered it more difficult for Mr. Fontenot to determine if the tractor trailer was wholly within its own lane of travel. Finally, the existence of the unbanked curve and the wet and rainy condition prevailing at the time made it less likely that Mr. Fontenot could have reasonably taken some effective action to avoid the obstruction to his passage.
We find no manifest error in the trial court’s finding that the evidence did not establish that Mr. Fontenot was con-tributorily negligent in failing to realize that the dragline track obstructed his lane of travel in time to have reasonably avoided it under the circumstances. See Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So.2d 50 (1964); Davis v. Lewis & Lewis, 226 La. 1064, 78 So.2d 174 (1954). In view of all the surrounding circumstances, we therefore agree that the proximate cause of the accident was Larive’s failure to maintain proper control over the truck and trailer and to take precautions commensurate with the highly dangerous nature of the instrumentality he was operating.
The defendants’ final argument as to the question of its liability to Mrs. Bellard is that Mr. Bellard was on a joint mission with the driver of the vehicle, Mr. Fontenot, and thus, Mr. Fontenot’s negligence is imputed to Mr. Bellard, thereby barring Mrs. Bel-lard’s recovery. In addition, defendants claim that Mr. Bellard assumed the risk of an accident because he knew or should have known that Mr. Fontenot was tired that morning and might fall asleep at the wheel and that he was a careless driver.
*712 Both of these contentions, however, presupposed our finding Mr. Fontenot negligent in his operation of the vehicle and that that negligence was a proximate cause of the ensuing collisions. Therefore, since we have held that the evidence does not preponderate in showing that Mr. Fontenot was contributorily negligent, these last two contentions of defendants have no merit.
The defendants’ final contention .is that the award of the trial judge was excessive. Mrs. Bellard also appealed and requested that the award of the trial judge he increased.
Counsel for Mrs. Bellard contends that Mr. Bellard was conscious for some time up until his death while en route to the hospital, and therefore, should be given an award for his pain and suffering. The evidence, however, does not support a finding that he was conscious at any time after the accident until the time of his death, and therefore, the award for pain and suffering was properly denied.
Relative to the issue of quantum for the wrongful death of Paul Bellard, the trial judge noted:
“At the time of his death, he was thirty-one years of age. He had been a healthy, robust individual, devoted to his wife and family. An exceptionally good employee, he had gained promotions from a roughneck to the position of a driller in only five and one-half years. His earnings increased from $4,316.90 in 1962 to $6,572.14 in 1965. His 1966 earnings up to the time of his death were in conformity with those of the previous year. Though he was not being considered for a promotion at the time of his death, there is little doubt that he would have promoted to ‘toolpusher’ before many years — a position which would have been his top capacity with his company. His wife was twenty-eight at the time of his death, and he is survived by six children ranging in age from twelve years to five months as of June 13, 1966.”
Based on these findings, the judge rendered the following awards:
MRS. PAUL BELLARD
Loss of love, affection and companionship-$10,000.00
Loss of support- 45,000.00
KENNETH BELLARD
Loss of love, affection and guidance-$10,000.00
Loss of support- 3,200.00
DALE BELLARD
Loss of love, affection and guidance-$10,000.00
Loss of support- 3,600.00
PAUL RICHARD BELLARD
Loss of love, affection and guidance-$10,000.00
Loss of support- 4,800.00
MICHAEL BELLARD
Loss of love, affection and guidance-$10,000.00
Loss of support- 5,600.00
RONALD BELLARD
Loss of love, affection and guidance-$10,000.00
Loss of support- 6,000.00
ANN BELLARD
Loss of love, affection and guidance-$10,000.00
Loss of support- 8,200.00
*713 In view of all the evidence and considering defendants’ ability to pay, we hold that the foregoing awards made by the trial judge were well within his broad discretion, and therefore, we are unable to say that those awards are either excessive or insufficient.
The final question presented upon this appeal is counsel for Mrs. Bellard’s contention that Bobby Miller, driver of the pick-up truck following the tractor-trailer combination was also negligent in contributing to the collision he had with the Fontenot vehicle. We find no actionable negligence on the part of Mr. Miller shown from the record. We fully agree with the trial judge that Mr. Miller could not have reasonably taken any effective action to prevent the Fontenot vehicle, which had continued out of control after striking the dragline, from hitting the pick-up truck.
For all the above reasons, the judgment of the trial court is affirmed at the costs of appellants-defendants, Louis Larive, Central Excavation Co., Inc., and Liberty Mutual Ins. Co.
Affirmed.
HOOD, J., dissents in part and assigns written reasons.

. The policy limitations were stipulated as $500,000.00 per accident and $200,-000.00 per person injured.

. The principal defendants made Henry Fontenot and his insurer, State Farm Mutual Automobile Ins. Co. third party defendants and sought judgment against them in the event the primary defendants were found liable. In addition, both Mrs. Dies and Mrs. Bellard sought recovery against Henry Fontenot and his insurer in the alternative. These alternate demands and the third party action were rejected by the trial court since it found the primary defendants solely liable to plaintiffs.

.Mr. Larive believed his left wheels to be about three feet from the center line before he pulled more to the right, and he stated that after he pulled to the right he felt his steering become a little heavier, as though his wheels were partially off the pavement. Of course, if his left wheels were already three feet from the center line, it would appear as though his right wheels on the trailer would already be on the shoulder of the road, since the roadway there was ten feet or less wide and the outermost measurements on the wheels of the trailer were over eight feet in width.

. This holding renders it unnecessary for us to consider other charges of negligence against Larive in failing to transport the dragline in the manner and under the conditions prescribed in the permit.

. Fontenot’s negligence is an issue here because the plaintiffs on each of the two consolidated cases have sued Mr. Fonte- *711 not in the alternative. Also, Mr. Larive, Central Excavation Co. and their insurer, Liberty Mutual Ins. Co. filed third party actions against Mr. Fontenot and his insurer, State Farm Mutual Automobile Ins. Co. See Footnote No. 2, supra.